**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| MONSTER ENERGY COMPANY,<br><br>        Plaintiff,<br><br>v.<br><br>ZUICHUDESECAI, et al.,<br><br>        Defendants. | Case No. 19-cv-00551<br><br>**Judge Jorge L. Alonso**<br><br>**Magistrate Judge Young B. Kim** |

**PLAINTIFF'S SUPPLEMENTAL MEMORANDUM IN SUPPORT OF PLAINTIFF'S
MOTION FOR ENTRY OF A PRELIMINARY INJUNCTION WITH RESPECT TO
<u>DEFENDANT VAPOREVER BIOTECH (HUIZHOU) CO., LIMITED</u>**

      Plaintiff Monster Energy Company ("MEC" or "Plaintiff") hereby provides the following supplemental memorandum in support of its Motion for Entry of a Preliminary Injunction against Defendant Vaporever Biotech (Huizhou) Co., Limited ("Defendant").

**Procedural Background**

      Defendant operates an Internet store on Made-In-China.com ("Defendant's Internet Store") that is advertising, offering for sale and selling vaping juice using counterfeit versions of MEC's federally registered trademarks and unauthorized copies of MEC's federally registered copyrighted designs. On January 31, 2019, this Court entered a Temporary Restraining Order ("TRO") [27] based on declarations and exhibits submitted by MEC. [13]. The TRO included an asset restraint on funds in PayPal, Inc. ("PayPal") accounts used by Defendant ("Defendant's PayPal Account") to prevent Defendant from moving funds offshore to China. [27] at ¶ 5. The TRO was extended on February 14, 2019 until February 28, 2019. [33]. MEC posted a $10,000 bond as required by the TRO. [28].

**Summary of Argument**

MEC continues to satisfy all of the elements required for entry of the Preliminary Injunction, including showing a strong likelihood of success on the merits and irreparable harm. Evidence submitted herewith shows Defendant's use of counterfeit versions of MEC's federally registered trademarks and unauthorized copies of MEC's federally registered copyrighted designs in connection with the advertising, offer for sale and sale of unauthorized vaping juice. Data from PayPal regarding Defendant's PayPal Account shows receipt of over $2 million, but that only $72,370.23 is currently restrained (less than 3% of Defendant's total revenue).[1] Declaration of Allyson Martin ("Martin Declaration") at ¶ 2. This indicates that Defendant frequently sweeps its accounts and is, thus, likely to swiftly move these funds outside of the United States if the asset restraint is lifted. Without the asset restraint, MEC would be prevented from realizing its right to final equitable relief of an accounting of profits and damages, or alternatively, statutory damages.[2] Defendant did not respond to MEC's expedited discovery requests[3] or provide any documentation regarding sales. However, Defendant's Internet Store indicates that it sells unauthorized vaping juice in bulk with capacity of "3000,000" bottles /

---

[1] In the four months prior to the restraint, data from PayPal indicates that over $820,000 has flowed through Defendant's PayPal Account. Martin Declaration at ¶ 2.

[2] In similar <u>contested</u> cases involving China-based Internet stores using counterfeit trademarks, Courts in this District have awarded statutory damages of $100,000 or more, despite defendants representing minimal sales. *See e.g., NBA Properties, Inc. et al. v. Yan Zhou, et al.*, 2017 U.S. Dist. LEXIS 148971, at *11 (granting summary judgment and awarding $150,000 for trademark counterfeiting); *Luxottica Grp. S.p.A., et al. v. Li Chen, et al.*, 2017 U.S. Dist. LEXIS 29999, at *11-12 (N.D. Ill. Mar. 2, 2017) (granting summary judgment and awarding $100,000 for trademark counterfeiting); *River Light V, L.P., et al. v. Zhangyali, et al.*, 2016 U.S. Dist. LEXIS 111301, at *13 (N.D. Ill. Aug. 22, 2016) (same).

[3] Pursuant to paragraph 4 of the TRO, MEC served First Sets of Interrogatories, Requests for Production and Requests for Admission on Defendant on February 14, 2019. Defendant's responses were due in five business days or on February 22, 2019.

month. Accordingly, the Preliminary Injunction, including the asset restraint, should be entered as to Defendant.

## I. THE MONSTER ENERGY TRADEMARKS AND COPYRIGHT DESIGNS

1. MEC is a nationwide leader in the business of developing, marketing, and selling beverages, including energy drinks. *See* previously filed Declaration of Bruce Kingsland ("Kingsland Declaration") [13] at ¶ 4. In 2002, MEC launched its MONSTER ENERGY® brand of drinks, bearing its now famous MONSTER ENERGY mark, mark ("Claw Icon Mark") and copyrighted design (the "Monster Energy Copyrighted Design"). *Id.* MEC's successful line of MONSTER™ drinks has grown to include numerous well-known products, including, but not limited to, original MONSTER ENERGY; MONSTER ASSAULT; MONSTER JUICE KHAOS; MONSTER JUICED RIPPER formerly MONSTER RIPPER; PUNCH MONSTER PIPELINE PUNCH; PUNCH MONSTER BALLER'S BLEND which has been rebranded as PUNCH MONSTER MIXXD; MONSTER ENERGY ABSOLUTELY ZERO; MONSTER ENERGY ZERO ULTRA; MONSTER ENERGY ULTRA RED; MONSTER ENERGY ULTRA SUNRISE; MONSTER ENERGY ULTRA CITRON; MONSTER REHAB, a line of tea-based non-carbonated energy drinks that includes MONSTER REHAB Tea + Lemonade + Energy and MONSTER REHAB Peach Tea + Energy; MEGA MONSTER; MONSTER ENERGY THE DOCTOR; and MONSTER ENERGY LEWIS HAMILTON; LO-CARB MONSTER ENERGY; JAVA MONSTER, which is a line of dairy-based coffee plus energy drinks; ESPRESSO MONSTER, which is a line of coffee beverages with three shots of espresso; CAFFE MONSTER, which is a line of coffee beverages made with 100% Arabica coffee; ÜBERMONSTER; MONSTER ENERGY IMPORT; PUNCH

MONSTER MAD DOG; MONSTER ENERGY ULTRA BLUE; MONSTER ENERGY ULTRA BLACK; MONSTER ENERGY ULTRA VIOLET; MONSTER REHAB Tea + Pink Lemonade + Energy, MONSTER REHAB Raspberry Tea + Energy, MONSTER REHAB Tea + Orangeade + Energy; MONSTER REHAB Tea + Dragon Fruit + Energy; MONSTER ENERGY EXTRA STRENGTH NITROUS TECHNOLOGY, which is a line of energy drinks with a blend of nitrous oxide and carbon dioxide to create a smoother taste that has been rebranded as MONSTER MAXX MAXIMUM STRENGTH; MUSCLE MONSTER, a line of dairy-based protein energy shakes; JUICE MONSTER RIPPER; JUICE MONSTER PIPELINE PUNCH; JUICE MONSTER MANGO LOCO; MONSTER HYRDO, which is a line of non-carbonated, lightly sweetened beverages with natural flavors and MONSTER GRONK (referred to collectively as the "MONSTER" line of energy drinks). [9] at ¶ 6. Shown below are true and accurate representative pictures illustrating some of MEC's MONSTER™ line of drinks and the packaging for certain products in that line.



**Figure 1 – Representative Pictures of MEC's MONSTER<sup>TM</sup> Drinks and Packaging**

MEC is the owner of numerous trademark registrations for the MONSTER ENERGY Trademarks, including, but not limited to, the U.S. Trademark Registrations listed in the Amended Complaint (collectively, the "MONSTER ENERGY Trademarks"). [9] at ¶ 14. This includes the below registrations covering drinks, including juice.



| MONSTER ENERGY (word mark) | | |
|---|---|---|
| U.S. Reg. No. 3,057,061 | U.S. Reg. No. 2,903,214 | U.S. Reg. No. 3,134,841 |

True and correct copies of the federal trademark registration certificates for the above MONSTER ENERGY Trademarks are attached hereto as **Exhibit 1**. *See also* Kingsland Declaration [13] at ¶ 6. Pursuant to 15 U.S.C. § 1065, the above-listed U.S. Trademark Registration Nos. 2,903,214; 3,057,061; and 3,134,841 are incontestable. [13] at ¶ 6.

MEC has registered its Monster Energy Copyrighted Design with the United States Copyright Office. The registrations include, but are not limited to, "Stylized claw with jagged edges (original version)" (U.S. Copyright Registration No. VA 1-789-900), issued by the Register of Copyrights on October 11, 2011, and the corresponding supplemental registration changing ownership name from Hansen Beverages Company to Monster Energy Company: VA 1-433-242. The U.S. federal copyright registration certificate for the Monster Energy Copyrighted Design is attached hereto as **Exhibit 2**. *See also* Kingsland Declaration [13] at ¶ 12.

## II. DEFENDANT SOLD COUNTERFEIT VAPING JUICE

Defendant's Internet Store sold unauthorized vaping juice using counterfeit versions of MEC's federally registered MONSTER ENERGY Trademarks and unauthorized copies of MEC's federally registered Monster Energy Copyrighted Design. *See* **Exhibit 3** attached hereto; Kingsland Declaration [13] at ¶ 14. Defendant's Internet Store indicates that it sells unauthorized vaping juice in bulk with capacity of "3000,000" bottles / month. Below are excerpts from Exhibit 3 (screenshots from Defendant's Internet Store):



| **Figure 2A – Unauthorized Vaping Juice** | **Figure 2B - Defendant's Internet Store Production Capacity** |



**Figure 3 – Excerpt from Catalog**

6

Data from PayPal regarding Defendant's PayPal Account shows receipt of over $2 million, but that only $72,370.23 is currently restrained. *See* Table 1 below; Martin Declaration at ¶ 2  In just the four months prior to restraint of the account, Defendant received over $820,000 in Defendant's PayPal Account, reflecting that it had transferred out over $700,000 in that time period. *Id*.

| Total Amount Received | Amount Received Last 4 Months | Amount Transferred Out | Amount Restrained | Restrained % of Total Amount Received |
|---|---|---|---|---|
| $2,110,829.95 USD | $58,974.02<br>$40,356.36<br>$92,452.35<br>$641,586.18 | $2,038,459.72 USD | $72,370.23 USD | 3.42% |

Table 1

## ARGUMENT

**I.     PRELIMINARY INJUNCTION FACTORS HAVE BEEN SATISFIED.**

A party seeking to obtain a preliminary injunction must demonstrate: (1) that its case has some likelihood of success on the merits; (2) that no adequate remedy at law exists; and (3) that it will suffer irreparable harm if the injunction is not granted.  *See Ty, Inc. v. The Jones Group, Inc.*, 237 F.3d 891, 895 (7th Cir. 2001).  If the Court is satisfied that these three conditions have been met, then it must consider the harm that the non-moving party will suffer if preliminary relief is granted, balancing such harm against the irreparable harm the moving party will suffer if relief is denied.  *Id.*  The Court must consider the potential effect on the public interest (non-parties) in denying or granting the injunction.  *Id.*  The Court then weighs all of these factors, engaging in what the Court has deemed "the sliding scale approach" – the more likely the plaintiff will succeed on the merits, the less the balance of harms need favor the plaintiff's position.  *Id.* (quoting *Abbott Labs. v. Mead Johnson & Co.,* 971 F.2d 6, 11 (7th Cir. 1992)).

### A. MEC Has Shown a High Likelihood of Success on the Merits.

#### i. MEC Will Likely Succeed on Its Trademark Infringement and Counterfeiting, False Designation of Origin, and UDTPA Claims.

A defendant is liable for trademark infringement and counterfeiting under the Lanham Act if it, "without the consent of the registrant, use[s] in commerce any reproduction, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods . . . which such use is likely to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1114(1). MEC's Lanham Act and UDTPA claims involve the same elements. *See Packaging Supplies, Inc. v. Harley-Davidson, Inc.*, 2011 WL 1811446, at *5 (N.D. Ill. May 12, 2011). A Lanham Act trademark infringement claim has two elements. *See* 15 U.S.C. § 1125(a). First, plaintiff must show "that its mark is protected under the Lanham Act." *Barbecue Marx, Inc. v. 551 Ogden, Inc.*, 235 F.3d 1041, 1043 (7th Cir. 2000). Second, plaintiff must show that the challenged mark is likely to cause confusion among consumers. *Id*.

The registrations for the MONSTER ENERGY Trademarks constitute *prima facie* evidence of their validity and of MEC's exclusive right to use the MONSTER ENERGY Trademarks pursuant to 15 U.S.C. § 1057(b). Furthermore, MEC has not licensed or authorized Defendant to use its MONSTER ENERGY Trademarks or copy or distribute the Monster Energy Copyrighted Design, Defendant is not an authorized retailer of genuine Monster Energy Products. Kingsland Declaration [13] at ¶ 15. Thus, MEC satisfies the first element of its Lanham Act claim.

Defendant advertised, offered for sale and sold unauthorized vaping juice using counterfeit marks identical to the MONSTER ENERGY Trademarks. *Id.* The Seventh Circuit has held that where "one produces counterfeit goods in an apparent attempt to capitalize upon the

popularity of, and demand for, another's product, there is a presumption of a likelihood of confusion." *Microsoft Corp. v. Rechanik*, 249 F. App'x 476, 479 (7th Cir. 2007). Accordingly, the Court can presume a likelihood of confusion from Defendant's use of the MONSTER ENERGY Trademarks. The result is the same when considered in light of the Seventh Circuit's seven enumerated factors to determine whether there is a likelihood of confusion, which include: (1) similarity between the marks in appearance and suggestion; (2) similarity of the products; (3) area and manner of concurrent use; (4) degree of care likely to be exercised by consumers; (5) strength of complainant's mark; (6) actual confusion; and (7) intent of the defendants to palm off their products as that of another. *AutoZone, Inc. v. Strick*, 543 F.3d 923, 929 (7th Cir. 2008). No one factor is dispositive, but the similarity of the marks, actual confusion, and the defendant's intent are "particularly important." *Id*.

The relevant consumers are diverse with varying degrees of sophistication, and they are likely to have difficulty distinguishing genuine Monster Energy Products from Defendant's unauthorized vaping juice. Indeed, Defendant is intentionally trying to induce consumers to purchase unauthorized vaping juice. This is particularly true in this case where the Defendant's products were offered for sale and sold on the Internet where consumers cannot inspect the physical product. Evidence of actual consumer confusion is not required to prove that a likelihood of confusion exists, particularly given the compelling evidence that Defendant is attempting to "palm off" its goods as genuine Monster Energy Products. *CAE, Inc. v. Clean Air Eng'g, Inc*., 267 F.3d 660, 685 (7th Cir. 2001). Accordingly, MEC is likely to establish a *prima facie* case of trademark infringement and counterfeiting, false designation of origin, and violation of the UDTPA.

### ii. MEC Is Likely to Succeed on Its Copyright Infringement Claim

The United States Copyright Act provides that "[a]nyone who violates any of the exclusive rights of the copyright owner … is an infringer of the copyright." 17 U.S.C. § 501. Among these exclusive rights granted to MEC under the Copyright Act are the exclusive rights to reproduce, prepare derivative works of, distribute copies of, and display the Monster Energy Copyrighted Design to the public. 17 U.S.C. § 106.

To establish a claim for copyright infringement, a plaintiff must show: "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *JCW Invs., Inc. v. Novelty, Inc.*, 482 F.3d 910, 914 (7th Cir. 2007) (internal citations omitted). Copying can be shown through direct evidence, or it can be inferred where a defendant had access to the copyrighted work and the accused work is substantially similar. *Spinmaster, Ltd. v. Overbreak LLC*, 404 F. Supp. 2d 1097, 1102 (N.D. Ill. 2005). To determine whether there is a substantial similarity that indicates infringement, Courts use the "ordinary observer" test which asks whether "an ordinary reasonable person would conclude that the defendant unlawfully appropriated protectable expression by taking material of substance and value." *Id.* A work may be deemed infringing if it captures the "total concept and feel of the copyrighted work." *Id.*

With respect to the first element, MEC is the owner of at least one relevant federally registered copyright. As to the second element, Defendant is willfully and deliberately copying the Monster Energy Copyrighted Design in its entirety to facilitate the sale of unauthorized vaping juice. Defendant's unauthorized copies are identical or substantially similar to the Monster Energy Copyrighted Design. Such copying infringes upon MEC's exclusive rights under 17 U.S.C. § 106. As such, MEC has proved it has a reasonable likelihood of success on the merits for its copyright infringement claim.

### B. There Is No Adequate Remedy at Law, and MEC Will Suffer Irreparable Harm in the Absence of Preliminary Relief.

The Seventh Circuit has "clearly and repeatedly held that damage to a trademark holder's goodwill can constitute irreparable injury for which the trademark owner has no adequate legal remedy." *Re/Max N. Cent., Inc. v. Cook,* 272 F.3d 424, 432 (7th Cir. 2001) (citing *Eli Lilly & Co. v. Natural Answers, Inc.,* 233 F.3d 456, 469 (7th Cir.2000)). Likewise, an injury to a copyright holder that is "not easily measurable in monetary terms, such as injury to reputation or goodwill, is often viewed as irreparable." *EnVerve, Inc. v. Unger Meat Co.,* 779 F. Supp. 2d 840, 844 (N.D. Ill. 2011). Irreparable injury "almost inevitably follows" when there is a high probability of confusion because such injury "may not be fully compensable in damages." *Helene Curtis Industries, Inc. v. Church & Dwight Co., Inc.*, 560 F.2d 1325, 1332 (7th Cir. 1977) (citation omitted). "The most corrosive and irreparable harm attributable to trademark infringement is the inability of the victim to control the nature and quality of the defendants' goods." *Int'l Kennel Club of Chicago, Inc. v. Mighty Star, Inc.,* 846 F.2d 1079, 1092 (7th Cir. 1988). As such, monetary damages are likely to be inadequate compensation for such harm. *Ideal Indus., Inc. v. Gardner Bender, Inc.,* 612 F.2d 1018, 1026 (7th Cir. 1979).

Defendant's unauthorized use of the MONSTER ENERGY Trademarks and Copyrighted Design has and continues to irreparably harm MEC through diminished goodwill and brand confidence, damage to MEC's reputation, loss of exclusivity, and loss of future sales. Kingsland Declaration [13] at ¶¶ 21-25. The extent of the harm to MEC's reputation and goodwill and the possible diversion of customers due to loss in brand confidence are both irreparable and incalculable, thus warranting an immediate halt to Defendant's infringing activities through injunctive relief. *See Promatek Industries, Ltd. v. Equitrac Corp.,* 300 F.3d 808, 813 (7th Cir. 2002) (finding that damage to plaintiff's goodwill was irreparable harm for which plaintiff had

no adequate remedy at law). *Gateway Eastern Railway Co. v. Terminal Railroad Assoc. of St. Louis,* 35 F.3d 1134, 1140 (7th Cir. 1994) ("[S]howing injury to goodwill can constitute irreparable harm that is not compensable by an award of money damages."). MEC will suffer immediate and irreparable injury, loss, or damage without the preliminary injunction. "Like trying to un-ring a bell, trying to 'compensate' after the fact for damage to business goodwill and reputation cannot constitute a just or full compensation." *Adidas Am., Inc. v. Skechers USA, Inc.*, 149 F. Supp. 3d 1222, 1249 (D. Oregon 2016) (citing McCarthy on Trademarks § 30:46).

### C. The Balance of Harms Remains in MEC's Favor and an Asset Restraint Remains Proper.

MEC has shown a likelihood of success on the merits[4], an immediate and irreparable harm suffered as a result of Defendant's activities and that, unless Defendant's assets remain frozen, Defendant will likely hide or move its ill-gotten funds to offshore bank accounts. In that case, MEC would be prevented from realizing its right to final equitable relief of an accounting of profits and statutory damages, and would be irreparably harmed. As such, an asset restraint is proper and the balance of harms remains in MEC's favor.

Courts have the inherent authority to issue a prejudgment asset restraint when plaintiff's complaint seeks relief in equity. *Animale Grp. Inc. v. Sunny's Perfume Inc.*, 256 F. App'x 707, 709 (5th Cir. 2007); *Lorillard,* 2005 WL 3115892, at *13 (N.D. Ill. Nov. 8, 2005). MEC seeks equitable relief. Section 35 of the Lanham Act provides that a plaintiff in a trademark infringement shall be entitled "subject to the principles of equity, to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action." 15 U.S.C. § 1117(a) (emphasis added). "If the court shall find that the amount of the recovery based on

---

[4] This Court has previously awarded statutory damages of $1 million on summary judgment in a previous similar case in favor of Monster Energy Company. *Monster Energy Co. v. Meng Chun Jing*, 2015 U.S. Dist. LEXIS 86956 (July 6, 2015).

12

profits is either inadequate or excessive the court may in its discretion enter judgment for such sum as the court shall find to be just, according to the circumstances of the case." *Id*. Additionally, subsection (c) provides that "plaintiff may elect, at any time before final judgment is rendered by the trial court, to recover, instead of actual damages and profits under subsection (a), an award of statutory damages….as the court consider just." 15 U.S.C. § 1117(c).

Even though Defendant's PayPal Account has received over $2,110,829, only $72,370 is restrained. *See* Table 1; Martin Declaration at ¶ 2. In the past four months alone, Defendant has received over $820,000 in its PayPal account, reflecting that it has transferred out over $700,000 from its account in that time. *Id*. As such, it is highly likely that Defendant will swiftly move the restrained funds out of the PayPal account and outside of the United States if the asset restraint is not in place. Defendant has provided no evidence that it has identifiable assets in the United States other than its PayPal account.

Defendant has also not asserted or shown that it is being harmed by the preliminary restraint of $72,370 – approximately 3% of the total revenue received from its PayPal account alone – until this Court enters a final judgment in this case. Moreover, given Defendant's willful actions, Defendant should be given little equitable consideration. *See e.g., NBA Props., et al. v. Yan Zhou, et al*., 2017 U.S. Dist. LEXIS 148971, at \*8 (N.D. Ill. Sep. 14, 2017) (finding unpersuasive defendant's claim that they were "unfamiliar with Plaintiffs' trademarks, that they never physically handled the counterfeit merchandise, and that they only made minimal sales."). In assessing the risk of irreparable harm to Defendant, the Court should "exclude any burden it voluntarily assumed by proceeding in the face of a known risk." For all of these reasons, the Preliminary Injunction Order should be entered.

## **CONCLUSION**

Accordingly, MEC respectfully requests that this Court enter the Preliminary Injunction Order as to Defendant Vaporever Biotech (Huizhou) Co., Limited.

Dated this 25th day of February 2019.    Respectfully submitted,

/s/ Justin R. Gaudio
Amy C. Ziegler
Justin R. Gaudio
Allyson M. Martin
Abby M. Neu
Greer, Burns & Crain, Ltd.
300 South Wacker Drive, Suite 2500
Chicago, Illinois 60606
312.360.0080 / 312.360.9315 (facsimile)
aziegler@gbc.law
jgaudio@gbc.law
amartin@gbc.law
aneu@gbc.law

*Counsel for Plaintiff Monster Energy Company.*

**CERTIFICATE OF SERVICE**

    I hereby certify that on the 25th day of February 2019, I will electronically file the foregoing with the Clerk of the Court using the CM/ECF system, I will electronically publish the documents on a website to which the Defendant Domain Names that have been transferred to MEC's control now redirect, and I will send an e-mail to the e-mail addresses identified in Exhibits 3 and 4 to the Declaration of Bruce Kingsland and any e-mail addresses provided for Defendants by third parties that includes a link to said website.

          /s/ Justin R. Gaudio
          Amy C. Ziegler
          Justin R. Gaudio
          Allyson M. Martin
          Abby M. Neu
          Greer, Burns & Crain, Ltd.
          300 South Wacker Drive, Suite 2500
          Chicago, Illinois 60606
          312.360.0080 / 312.360.9315 (facsimile)
          aziegler@gbc.law
          jgaudio@gbc.law
          amartin@gbc.law
          aneu@gbc.law

          *Counsel for Plaintiff Monster Energy Company.*