```
 1                IN THE UNITED STATES DISTRICT COURT
                 FOR THE NORTHERN DISTRICT OF ILLINOIS
 2                         EASTERN DIVISION

 3   MONSTER ENERGY COMPANY,          )  Docket No. 19 C 00551
                                      )
 4              Plaintiff,            )  Chicago, Illinois
                                      )  February 28, 2019
 5        v.                          )  10:05 a.m.
                                      )
 6   THE PARTNERSHIPS,                )
                                      )
 7              Defendants.           )

 8
              TRANSCRIPT OF PROCEEDINGS - Motion Hearing
 9             BEFORE THE HONORABLE JORGE L. ALONSO

10
     APPEARANCES:
11

12   For the Plaintiff:    GREER, BURNS & CRAIN, LTD., by
                           MR. JUSTIN R. GAUDIO
13                         MS. ABBY NEU
                           300 South Wacker Drive
14                         Suite 2500
                           Chicago, IL 60606
15

16   For the Defendant Vaporever Biotechnology:

17                         ABC PATENT SERVICE, LLC, by
                           MR. FRANK GAO
18                         1261 21st Street
                           Wilmette, IL 60091
19

20   Court Reporter:       LISA H. BREITER, CSR, RMR, CRR
                           Official Court Reporter
21                         219 S. Dearborn Street, Room 1902
                           Chicago, IL 60604
22                         (312) 818-6683
                           lisa_breiter@ilnd.uscourts.gov
23

24

25
```

1      (In open court.)

2      THE CLERK: 19 C 551, Monsters Energy vs. The
3 Partnerships.

4      MR. GAUDIO: Good morning.

5      Justin Gaudio on behalf of Monsters Energy.

6      MS. NEU: Abby Neu on behalf of Monster Energy.

7      MR. GAO: Good Morning, Your Honor.

8      This is Frank Gao representing Vaporever Biotech,
9 Limited, in China.

10      THE COURT: All right. Mr. Gao is present.

11      Counsels, what's your position? He has filed a
12 motion, a motion for extension of time to answer or otherwise
13 respond. The case is here for preliminary injunction, TRO
14 having previously been entered.

15      MR. GAUDIO: We have no objection to the 30-day
16 extension request.

17      THE COURT: All right. So as to that defendant
18 Z-U-I-C-H-U-D-E-S-E-C-A-I, the motion that is document No. 37
19 is going to be granted.

20      You also have a motion pending to file your
21 appearance, correct?

22      MR. GAO: Yes.

23      THE COURT: That is granted, also.

24      MR. GAO: Thank you, Your Honor.

25      THE COURT: So your answer will be due by March 20th.

1    And Counsels, how do you want to proceed as to that defendant?
2         MR. GAUDIO: To clarify, Your Honor, I believe the
3    name read into the record for the extension is the first named
4    defendant and not the defendant that requested the extension
5    which is the Vapor -- Vaporever Biotech.
6         THE COURT: All right. Thank you for clearing that
7    up.
8         Vapor, in terms of the schedule that you've announced,
9    have you got a number?
10        MR. GAO: No. 16? Defendant number maybe 6 or 16.
11        MR. GAUDIO: 16.
12        THE COURT: Okay. So the motion is granted as to
13   defendant Vaporever, V-A-P-O-R-E-V-E-R, Biotech
14   (H-U-I-Z-H-O-U), Limited. The Motion No. 37 is granted as to
15   that defendant.
16        And Mr. Gaudio, how do you want to proceed as to that
17   defendant?
18        MR. GAUDIO: We're seeking entry of the preliminary
19   injunction with respect to all defendants today including this
20   defendant.
21        THE COURT: Okay. And argument.
22        MR. GAO: Yes, Your Honor. I'm only representing
23   Vaporever --
24        THE COURT: Right.
25        MR. GAO: -- Biotech Company.

1  I oppose -- I respectfully oppose the preliminary
2  injunction.
3  THE COURT: On a previous court date, sir, you told me
4  a couple of things. You told me your client is a mom-and-pop.
5  Is that any defense to your motion today or your case?
6  MR. GAUDIO: No, it is not, Your Honor.
7  And to the contrary, we have presented evidence
8  showing that over $2 million has flown through the relevant
9  Paypal account.
10  And on their website, they indicate a 3 million bottle
11  per month production capacity.
12  THE COURT: And you also told me on a prior court
13  date, Mr. Gao, that it's just the flavoring that they are --
14  MR. GAO: Yes. They are still selling vapor flavoring
15  for electronic cigarette. My client never got into drinking
16  business.
17  Your Honor, I'm an organic chemist, was in graduate
18  school for seven years, worked as an organic chemist for more
19  than 10 years. Basically something I remember my boss in
20  graduate school told me something you can smoke may not be good
21  for your -- for eating.
22  Basically my client selling the flavor, some kind of
23  organic compounds to do -- you know, to flavoring electronic
24  cigarette. They're not for drinking. It's not healthy to
25  drink.

1  THE COURT: Okay. Mr. Gaudio, what's the relevance of
2  that argument?
3  MR. GAO: The relevant is that there's no confusion --
4  likelihood of confusion that, you know, people will realize
5  Monster gonna sell vapor liquid in that field. In fact,
6  Monster never register the trademark in that category.
7  THE COURT: Counsels?
8  MR. GAUDIO: As explained in our supplemental
9  memorandum, document No. 48, with respect to this defendant,
10  first of all, they are infringing our client's copyright, the
11  clawmark.
12  So irrespective of any likelihood of confusion
13  analysis, it's an exact copy of our client's clawmark, which
14  they're not allowed to do, and that constitutes copyright
15  confusion.
16  In addition -- and as laid out for the reasons in our
17  brief in more detail -- there's a likelihood of confusion.
18  They're using an exact copy of our client's product in their
19  advertisement and offer for sale.
20  We also have trademark registrations covering juice
21  and other beverages. Consumers are unsophisticated in this
22  area, and there is likely to be some sort of confusion as to
23  sponsorship regarding the products at issue.
24  And as counsel just pointed out, this is particularly
25  important if someone believes that this is an energy drink or

1  shot that they should be drinking, it could be toxic, which is
2  another reason the injunction should remain in place for the
3  pendency of the case.  Additionally, counsel showed up two
4  weeks ago.  There's nothing on record supporting any of this.
5  The only filings are from plaintiff.
6       We also served discovery pursuant to the Court's
7  expedited discovery order in the TRO.  That was due last
8  Friday.  Nothing's been received.
9       To the extent there's any representations made today
10 in open court, we believe those should be discarded.  If
11 counsel wants to file a motion and put something in writing,
12 that should be done through the proper form.
13      THE COURT:  Mr. Gao.
14      MR. GAO:  Yeah, if I may.  Basically in my motion for
15 extension, I said plaintiff filed complaint January 28th.  It's
16 just before Chinese New Year.  People try for Chinese New Year.
17 Maybe Chinese New Year last for like a month.
18      I got, you know, the call from them one day before,
19 you know, the court date.  Again, I didn't know much about the
20 case.  And my client, I never met him.  And I thought he told
21 me it's a mom-and-pop store.
22      You know, I have to verify his account has $2 million.
23 You know, again, I'm not sure.  You know, I would like to start
24 in the beginning basically.  There is no personal jurisdiction
25 here.  I don't think venue is proper here.

1      There's no service of process. In fact, my client
2 never paid any tax in the great state of Illinois, no property
3 he owns here. Never been here to this district.
4      And my client ask plaintiff's investigator if he can
5 make calls to her when she ordered, and, you know, plaintiff's
6 investigator refused.
7      So there's no phone calls ever to this state, and my
8 client never consented to this court. There's no personal
9 jurisdiction. My client only resides in China.
10      I don't think venue is proper here as well, and plus
11 in addition, there's no service of process. I believe client
12 has never serve my client through Hague Convention. He never
13 received the complaint. No translation ever to the complaint.
14 And I don't think there is a service of process, Your Honor.
15      THE COURT: Mr. Gaudio, you're not suggesting that
16 there is at this point?
17      MR. GAUDIO: We have them -- we served them pursuant
18 to the Court's Rule 4(f)(3) order on February 27th earlier this
19 week. They've been given email notice throughout these
20 proceedings, and obviously two weeks ago, they've had notice
21 since at least then.
22      THE COURT: But in terms of how you're proceeding
23 today and how you proceeded at the TRO, it was *ex parte*,
24 correct?
25      MR. GAUDIO: The *ex parte* -- the TRO extension was *ex*

1  *parte*.  Today was not.  They were given notice on Monday when
2  this motion was filed.
3              THE COURT:  And in terms of counsel's arguments
4  regarding personal jurisdiction, anything -- you address that,
5  of course, in your motion.  But anything specific that you want
6  to argue regarding Vaporever?
7              MR. GAUDIO:  Just quickly, it's well-established that
8  when defendants are reaching out to do business in a
9  jurisdiction, that establishes personal jurisdiction over them.
10             In this case, that's *Illinois v. Hemi*, Seventh
11 Circuit.  In this case, defendants were reaching out to do
12 business with the United States including Illinois, offered for
13 sale, sold and shipped the infringing products into Illinois,
14 which establishes jurisdiction over them.
15             Additionally, service is proper pursuant to
16 Rule 4(f)(3) as authorized by this Court.  First of all, the
17 Hague Convention doesn't apply since defendant's address was
18 unknown.
19             Even if it was known, we're not required to go through
20 the Hague to serve them to the Chinese Central Ministry, which
21 takes one to two years.
22             In fact, we just had another one yesterday confirming
23 that email service is proper on China-based internet store
24 defendants.  For those reasons, the preliminary injunction
25 should been granted.

1       And once again, it's very improper to, when he's had
2  notice of this for two weeks, to come in and raise these sort
3  of arguments for the first time at today's hearing.  If he
4  wants to make those arguments, he's welcome to do so, but it
5  needs to be through a motion.
6       THE COURT:  Mr. Gao.
7       MR. GAO:  Again, you know, it was Chinese New Year.
8  Today still Chinese New Year celebration.  It's hard to reach
9  my client.  And basically my client offered the internet is not
10 his internet.
11      It's not a company's internet made in China in his
12 shop.  There is address certain over there.  That's how they
13 got to know them.
14      They -- my client, the internet store is not
15 interactive.  Basically it has all the products there like he
16 offers many, many flavorings on the website.
17      If somebody wants order, they have to contact the
18 person.  Here is called a Nicole, and I saw the email back and
19 forth between plaintiff's investigator Clara Woos (phonetic)
20 with Nicole.
21      And -- and, you know, in an email, you know, he
22 wanted -- Clare wanted sample, to purchase sample.  And my
23 client just gave it to her for free, and Clara only paid
24 transportation fees, about 230 Ren RMB, equivalent of 30 plus
25 dollars, and that's just fees.

1     My client never made any money, you know.  It's free
2 of charge.  You know, sometimes client want to help, you know.
3 Potential purchasers, they gave out the free of charge.  Never
4 thought, you know, freebies, the person got freebies sued us.
5 I don't think it's fair to my client.
6     In addition, my client told me, he -- you know, he's
7 not -- again, he's not selling any energy drink, and he use the
8 Energy Monster as just, you know -- it's just de minimis use
9 denoting the flavor of similar to the Monster.  And he's not
10 selling anything.
11     He didn't put Monster as a label on the products.  In
12 fact, Clara Woot (phonetic) of plaintiff's investigator
13 received the products.  No labels labeling Monster Energy.
14 There's nothing there.
15     And basically, you know, is my client showing that
16 Monster Energy is just a flavoring, you know.  It's like a
17 Coca-Cola, you know, use the flavoring of, you know, Coca-Cola
18 or Mountain Dew flavor, you know.  But my client never sell
19 anything with Monster, Inc., label on their bottle.
20     Also, in terms of copyright issue, my client just want
21 to, you know, use that as a de minimis use.  I mean, there's --
22 you know, my client never made a profit on that.  Again, I
23 mean, there's no damage on a -- you know, on a trademark or
24 copyright.  I mean, how could, you know, plaintiff, you know,
25 Monster, sue my client?  I, you know -- I just -- I couldn't

1 got it.

2 THE COURT: Mr. Gaudio, do you want to help him out?

3 MR. GAUDIO: We'll rely on our briefs unless the Court
4 has any further questions.

5 THE COURT: All right. I've reviewed those briefs.
6 I've reviewed the supplemental brief regarding Vaporever. I've
7 reviewed the supporting documents including the declarations.
8 I've also reviewed the order that was submitted as a proposed
9 order, and the motion's going to be granted as to all of the
10 defendants including Vaporever.

11 I agree with the plaintiff that they have established
12 personal jurisdiction over the defendants including Vaporever
13 based on their targeting of business and reaching out to do
14 business with residents of this state.

15 I agree with the plaintiff that the injunctive relief
16 that was previously granted in the temporary restraining order
17 should remain in place through the pendency of the litigation,
18 and that issuing the preliminary injunction is warranted under
19 Rule 65.

20 They have established that plaintiff has demonstrated
21 a likelihood of success on the merits, that no remedy at law
22 exists, and that plaintiff will suffer irreparable harm if the
23 injunction is not granted at this point. They have proven
24 prima facie their case of trademark infringement.

25 The relief requested is granted. I will enter the

1  order as proposed.  The surety bond that was posted will remain
2  in place until final disposition of the case or until this
3  injunction is terminated.
4         What does the plaintiff suggest in terms of the
5  proceedings as to Vaporever?
6         MR. GAUDIO:  Well, the response deadline is towards
7  the end of March, so we could wait to see what happens there.
8  And we're going to be probably moving for some type of motion
9  shortly thereafter, or we could set a status in April, whatever
10 the Court desires.
11        THE COURT:  All right.  Mr. Gao, the response, the
12 answer or responsive pleading will be due on March 20th for
13 your motion.
14        MR. GAO:  March 28th, yeah.
15        THE COURT:  March 2-0 for your motion.  And I'll set a
16 court date in early -- in late March.
17        THE CLERK:  March 28th at 9:30.
18        THE COURT:  March 28th at 9:30 is the next court date
19 here.  And I will ask the parties to file a joint status report
20 pursuant to my standing order at least three days before that
21 court date.
22        All right.  Thanks for your patience this morning.
23 We'll see everyone back here on March 28th.
24        MR. GAUDIO:  Your Honor, I think I have a conflict
25 that day.  Could we either do the next week or the 26th?

1 | Sorry.
2 | THE CLERK: March 26th, 9:30.
3 | MR. GAUDIO: Thank you.
4 | THE COURT: All right. Mr. Gao, March 26th at 9:30
5 | back here.
6 | MR. GAO: Okay.
7 | MR. GAUDIO: Thank you, Your Honor.
8 | THE COURT: Thank you.
9 | MR. GAO: Thank you, Your Honor.
10 | MS. NEU: Thank you, Your Honor.
11 | (Concluded at 10:27 a.m.)
12 | \* \* \* \* \* \* \* \* \* \*
13 | C E R T I F I C A T E
14 | I certify that the foregoing is a correct transcript of the
15 | record of proceedings in the above-entitled matter.
16 |
17 | /s/ LISA H. BREITER                March 5, 2019
   | LISA H. BREITER, CSR, RMR, CRR
18 | Official Court Reporter