**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| MONSTER ENERGY COMPANY, | |
| Plaintiff, | Case No. 19-cv-00551 |
| v. | **Judge Jorge L. Alonso** |
| ZUICHUDESECAI, et al., | **Magistrate Judge Young B. Kim** |
| Defendants. | |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT VAPOREVER
BIOTECH (HUIZHOU) CO., LIMITED'S MOTION TO DISMISS**

Plaintiff Monster Energy Company ("MEC" or "Plaintiff") submits its response to Defendant Vaporever Biotech (Huizhou) Co., Limited's ("Defendant") Motion to Dismiss [55].

Defendant's Motion should be denied. This Court already rejected Defendant's same arguments at the February 28, 2019 preliminary injunction hearing, finding among other things, that personal jurisdiction was proper over Defendant, that Plaintiff had demonstrated a likelihood of success on the merits, and that Plaintiff had proven its *prima facie* case of trademark infringement. [54] at 11:11-24. These same arguments should again be denied. Specifically, personal jurisdiction is proper over Defendant because Defendant reached out to do business with Illinois residents, and shipped the product to Illinois. Venue is proper pursuant to 28 U.S.C. § 1391(c)(3). Additionally, a summons was issued and Defendant was properly served electronically pursuant to this Court's Order under Fed. R. Civ. P. 4(f)(3). Finally, Plaintiff has properly stated its trademark and copyright claims. As such, Defendant's Motion should be denied[1].

---

[1] Additionally, Defendant waived its right to contest defenses enumerated under Fed. R. Civ. P 12(b)(2)-(5) by appearing at the February 14, 2019 hearing and arguing only defenses on the merits.

## BACKGROUND

MEC is a nationwide leader in the business of developing, marketing, and selling beverages, including energy drinks. Amended Complaint [9] at ¶ 5; *See also* Declaration of Bruce Kingsland ("Kingsland Declaration") at ¶ 4. In 2002, long before Defendant's acts described herein, MEC launched its MONSTER ENERGY® brand of drinks bearing its now famous MONSTER ENERGY mark, [mark] mark ("Claw Icon Mark"), and copyrighted [design] design (the "Monster Energy Copyrighted Design"). *Id*. A true and correct representation of MEC's original MONSTER ENERGY® drink is shown below:



. *Id*.

Defendant operates an Internet store on Made-In-China.com[2] ("Defendant's Internet Store") that allows online orders to be placed and shipped to addresses in the United States, including Illinois. Defendant's Internet Store advertised, offered for sale, sold and shipped vaping juice using counterfeit versions of MEC's federally registered trademarks and unauthorized copies of MEC's federally registered copyrighted designs ("Counterfeit Products"). *See* Kingsland Declaration at ¶ 8. Defendant's Internet Store states that "North America" is a major market and

---

[2] Made-In-China.com specializes in bridging the gap between global buyers and quality Chinese suppliers. *See About Us*, Made In China, https://www.made-in-china.com/aboutus/aboutmic.

that it sells unauthorized vaping juice in bulk with capacity of "3000,000" bottles / month and an Annual Output Value of "US$10 Million - US$50 Million." *Id.* at ¶ 8. Data from PayPal regarding Defendant's PayPal account shows receipt of over $2 million, including 79 transactions with United States residents. *See* Declaration of Allyson Martin ("Martin Declaration") at ¶ 4.



| **Figure 1A – Unauthorized Vaping Juice** | **Figure 1B - Defendant's Internet Store Production Capacity** |



**Figure 2 – Excerpt from Defendant's Catalog**

Through the Made-In-China.com platform, Plaintiff's investigator purchased Counterfeit Products for sale on the Defendant's Internet Store, using an Illinois shipping address. Kingsland Declaration at ¶ 8. Defendant communicated with Plaintiff's investigator via email and provided

3

an invoice which clearly reflected an Illinois address. *Id*. at ¶ 9. Once payment was made, Defendant provided Plaintiff's investigator a tracking number and shipped the Counterfeit Products to Illinois. *Id*. at ¶ 10. The Declaration of Zhang Huizong, filed by Defendant, admits to offering products for sale into the United States and shipping Counterfeit Products to Illinois. [56-1] at ¶¶ 10-11.

On January 31, 2019, this Court entered a Temporary Restraining Order ("TRO") based on declarations and exhibits submitted by MEC. [27]. Among other things, the TRO directed the Clerk of the Court to "issue a single original summons in the name of 'ZUICHUDESECAI and all other Defendants identified in the Amended Complaint,' and permitted Plaintiff to effectuate service of process on Defendant pursuant to Federal Rule of Civil Procedure 4(f)(3) via email and electronic publication." *Id*. at ¶ 8. On February 27, 2019, Plaintiff served Defendant pursuant to the Court's Order, and the executed summons was filed. [51]; *see also* Martin Declaration at ¶ 2.

On February 11, 2019, Plaintiff filed a motion to extend the TRO. [29]. At the February 14, 2019 hearing on the TRO extension motion, Defendant's counsel appeared on behalf of Defendant without having filed a notice of appearance and argued that Defendant's use of MEC's intellectual property constituted fair use and that there was no infringement. *See* Transcript of February 14, 2019 Hearing, [41] at 4:22-5:4. Defendant's counsel did not make any objections or arguments regarding insufficient process or service, venue or personal jurisdiction. *See* [41]. The Court rejected Defendant's arguments and entered the TRO Extension Order. [33]. On February 18, 2019, Defendant filed a Motion for an Extension of Time to Answer. [37]. Defendant's Motion did not make any objections regarding insufficient process or service, venue or personal jurisdiction. [37-1].

4

On February 25, 2019, Plaintiff moved to convert the TRO into a Preliminary Injunction [45]. Defendant's counsel appeared at the February 28, 2019 preliminary injunction hearing and again argued fair use and lack of infringement. *See* Transcript of February 28, 2019 Hearing, [54] at pp. 4-6. Defendant's counsel also argued that service and venue were improper and that there was no personal jurisdiction over Defendant. *Id.* at pp. 6-7. The Court rejected Defendant's arguments and entered the Preliminary Injunction. [52], [53].[3] Specifically, the Court stated that "I agree with the plaintiff that they have established personal jurisdiction over the defendants including Vaporever based on their targeting of business and reaching out to do business with residents of this state" and "that plaintiff has demonstrated a likelihood of success on the merits…." *See* [54] at 11:11-14, 20-21.

## **ARGUMENT**

I.     **Personal Jurisdiction Is Proper Since Defendant Targeted and Reached Out to Do Business with Illinois and United States Residents. Defendant's Fed. R. Civ. P 12(b)(2) Defense Must Be Denied.**

a.     Legal Authority Regarding Personal Jurisdiction.

Without the benefit of an evidentiary hearing, Plaintiff bears only the burden of making a *prima facie* case for personal jurisdiction; all of Plaintiff's asserted facts should be accepted as true and any factual determinations should be resolved in its favor. *See Purdue Research Found. v. Sanofi-Sythelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003).

In *Hemi Group*, the Seventh Circuit found that it had personal jurisdiction over defendants because they operated a nationwide business model where they intentionally created and operated several commercial, interactive websites to offer products for sale and allow online orders from

---

[3] This Court also entered a Final Judgment Order against all defendants with the exception of Defendant Vaporever Biotech (Huizhou) Co., Limited on March 26, 2019. [64].

Illinois residents. *Illinois v. Hemi Grp. LLC*, 622 F.3d 754, 757-58 (7th Cir. 2009). Hemi did not single out Illinois and stated that it would ship to any state in the country except New York. *Id*. The "only specific sales to an Illinois resident that Illinois identified in its complaint were instigated by a special senior agent of the Illinois Department of Revenue", *i.e.,* an investigator for the plaintiff. *Id*. at 755. Based on these contacts, the Seventh Circuit found that personal jurisdiction was proper, stating:

> Hemi held itself out as open to do business with every state (including Illinois) except New York. After the customers made their purchases online, Hemi shipped the cigarettes to their various destinations. It is Hemi reaching out to residents of Illinois, and not the residents reaching back, that creates the sufficient minimum contacts with Illinois that justify exercising personal jurisdiction over Illinois.

*Id*. at 758. As such, personal jurisdiction is proper where a company "h[olds] itself out as open to do business with every state" and is "ready and willing to do business with [that state's] residents." *Id*.

Following the Seventh Circuit's decision in *Hemi Group*, Illinois courts regularly exercise personal jurisdiction over China based Internet Stores based on a single offer for sale to Illinois residents. S*ee, e.g., Monster Energy Company v. Chen Wensheng, et al.*, 136 F. Supp. 3d 897, 909 (N.D. Ill. 2015) ("defendants' offers to sell counterfeit Monster Energy Products on their Internet stores constitute tortious activity committed in Illinois sufficient to establish personal jurisdiction"); *Conair Corp., et al. v. Chen Xin, et al.,* No. 16-cv-9693 (N.D. Ill. Mar. 22, 2017) (Docket Entry no. 69) (same); *Christian Dior Couture, S.A. v. Lei Liu et al.*, 2015 U.S. Dist. LEXIS 158225, at *6 (N.D. Ill. Nov. 17, 2015) (same).

   b. Defendant's Intentional Actions Targeted Illinois, so Defendant Purposefully Availed Itself of Jurisdiction in Illinois.

As was the case in *Hemi Group*, Defendant "stood ready and willing to do business with Illinois residents" by creating and operating a commercial, fully interactive Internet store through

6

which unauthorized Monster Energy products could be purchased. *Hemi Grp.*, 622 F.3d at 758; *Monster Energy Co.*, 136 F. Supp. at 904. Specifically, Defendant operates an Internet store on Made-In-China.com, where it offered Counterfeit Products for sale to Illinois residents. MEC's investigator engaged in a chat conversation with Defendant and sent a payment with an Illinois shipping address. Kingsland Declaration at ¶ 8. Defendant then sent an invoice with the Illinois shipping address to MEC's investigator, shipped products to the Illinois address[4] and provided the FedEx tracking number to MEC's investigator. *Id.* at ¶¶ 9-10. Defendant followed up with MEC's investigator on multiple occasions, inquiring whether MEC's investigator received the products. *Id.* at ¶11 Finally, Defendant admits in its Declaration [56-1] that it sold and shipped products into the State of Illinois to MEC's investigator. [56-1] at ¶ 10. Defendant's intentional and purposeful contacts with Illinois residents subject it to personal jurisdiction in Illinois. *See Monster Energy Co. v. Chen Wensheng*, 136 F. Supp. 3d 897, 906 (N.D. Ill. 2015) (finding personal jurisdiction where seller "communicated with a buyer who had placed an order to purchase counterfeit Monster Energy Products, asked the buyer for the order number which clearly reflected an Illinois shipping address, and provided his PayPal account number for the buyer to make the payment for the item.").

Defendant does not mention or attempt to distinguish the Seventh Circuit's decision in *Hemi Group* even though it is controlling law and despite its factual similarities to this case.

---

[4] On page 5 of Defendant's Memorandum [56], Defendant states that "[w]hen the Monster's investigator received the products, there were no Monster's trademark and copyright materials on the products." [56] at p. 5. However, Defendant is liable because Defendant used MEC's federally registered trademarks and copyright in the listing on Defendant's Internet Store where the Counterfeit Products were advertised, offered for sale, sold and then shipped to Illinois. There is no requirement that the trademarks or copyrights be placed on the physical products that were ultimately shipped. *See* 15 U.S.C. Section 1114(1)(a) (prohibiting "any use in commerce…in connection with the sale, offering for sale, distribution, or advertising of any goods or services…"); *Tiffany & Co. v. Costco Wholesale Corp.*, 2015 U.S. Dist. LEXIS 119319, at *33 (S.D.N.Y. Sep. 8, 2015); *Chloe SAS v. Sawabeh Info. Servs. Co*, 2014 U.S. Dist. LEXIS 124433, at *18 (C.D. Cal. Sept. 5, 2014).

Likewise, Courts have expressly rejected Defendant's argument that it "has not directed any activities at residents of Illinois." Defendant "aimed [its] alleged tortious products to residents in all fifty states and 'made [its] services available to anyone by way of [its] website[s],'" and "[c]haracterizing the sales as unilateral is misleading . . . because it ignores several of [Defendant's] own actions that led up to and followed the sales." *Valtech, LLC v. 18th Ave. Toys Ltd.,* No. 14 C 134, 2015 U.S. Dist. LEXIS 17138, at *12 (N.D. Ill. Feb. 12, 2015). *See also Hemi Grp.*, 622 F.3d at 758; *Ty, Inc. v. Baby Me, Inc.*, 2001 U.S. Dist. LEXIS 5761, at *14 (N.D. Ill. Apr. 20, 2001).

For the same reasons, Defendant is also subject to jurisdiction pursuant to Fed. R. Civ. P. 4(k)(2). Rule 4(k)(2) provides for personal jurisdiction through nationwide service of process over any defendant provided that: (1) the plaintiff's claims are based on federal law; (2) no state court could exercise jurisdiction over the defendants; (3) the exercise of jurisdiction is consistent with the laws of the United States; and (4) the exercise of jurisdiction is consistent with the Constitution. *Cent. States, Se. & Sw. Areas Pension Fund v. Reimer Express World Corp.*, 230 F.3d 934, 940 (7th Cir. 2000). Since Defendant intentionally and knowingly offered for sale, sold, and shipped products to United States residents, personal jurisdiction is also proper under Rule 4(k)(2). *See Plixer Int'l v. Scrutinizer GmbH*, 905 F.3d 1, 5 (1st Cir. 2018).

Finally, fair play means that off-shore Internet Stores that decide to offer for sale and sell products to consumers in the United States, including Illinois, must come to the United States and stand accountable for conduct relating to such sales. *Christian Dior Couture, S.A. v. Lei Liu et al.*, 2015 U.S. Dist. LEXIS 158225, at *13 (N.D. Ill. Nov. 17, 2015). Defendant "certainly should not be surprised by the jurisdictional consequences of [its] actions" given that it had sufficient resources to purposefully avail itself of the Illinois market. *Id*. at *14 (quoting *Hemi Grp., LLC,*

622 F.3d at 758). As such, Defendant should have reasonably foreseen being subjected to jurisdiction in Illinois.[5]

## II. Venue Is Proper Since Defendant Is Not a United States Resident. Defendant's Fed. R. Civ. P 12(b)(3) Defense Must Be Denied.

Defendant is a China-based company. [56-1] at ¶ 6. As such, venue is proper in this Court pursuant to 28 U.S.C. § 1391 because "a defendant not resident in the United States may be sued in any judicial district." 28 U.S.C. § 1391(c)(3).

## III. A Summons Was Properly Issued, and Defendant Was Properly Served Electronically Under Fed. R. Civ. P 4(f)(3) Pursuant to This Court's Order. Defendant's Fed. R. Civ. P 12(b)(4)-(5) Defenses Must Be Denied.

Defendant was properly served pursuant to Fed. R. Civ. P. 4(f)(3) and this Court's Order [27] on February 27, 2019. [51]; *see also* Martin Declaration at ¶ 2. Specifically, this Court's Order [27] directed the Clerk of the Court to "issue a single original summons[6] in the name of 'ZUICHUDESECAI and all other Defendants identified in the Amended Complaint'" and permitted Plaintiff to effectuate service of process on Defendant pursuant to Federal Rule of Civil

---

[5] Additionally, Defendant waived defenses provided Under Fed. R. Civ. P 12(b)(2)-(5). A defendant waives the right to contest personal jurisdiction by "giving the plaintiff a 'reasonable expectation' that [the defendant] 'will defend the suit on the merits.'" *German American Financial Advisors & Trust Co. v. Rigsby*, 623 F. App'x 806, 808 (7th Cir. 2015). "A party's appearance without objecting to jurisdiction constitutes a waiver of service because an appearance is an affirmative act establishing both knowledge of the complaint and an intention to appear." *Bhagwati Corp. v. City of Waukegan*, No. 04-5478, 2005 U.S. Dist. LEXIS 44111 (N.D. Ill. Mar. 1, 2005) (citations omitted). In the present case, Defendant's counsel appeared at the February 14, 2019 hearing and argued against extending the TRO [27] based exclusively on the underlying merits of the case. Defendant made no arguments regarding jurisdiction, venue, process or service, and therefore waived any argument to contest. *Gerber v. Riordan*, 649 F.3d 514, 519 (6th Cir. 2011) (where defense counsel's general appearance "constituted a voluntary acceptance of the district court's jurisdiction, and therefore, a waiver of [defendant's] personal jurisdiction defense."). Defendant additionally filed a Motion for Extension of Time to Answer [37] on February 18, 2019, which made no mention of personal jurisdiction. *See German Am. Fin. Advisors*, 623 F. App'x at 808.

[6] The Advisory Committee Notes to the 1993 Amendment to Rule 4(b) states, "If there are multiple defendants, the plaintiff may secure issuance of a summons for each defendant, or may serve copies of a single original bearing the names of multiple defendants if the addressee of the summons is effectively identified." Fed. R. Civ. P. 4(b) advisory committee notes (1993) (emphasis added).

Procedure 4(f)(3) via email and electronic publication. [27] at ¶ 8. On February 27, 2019, Plaintiff served Defendant pursuant to the Court's Order[7] and the executed summons was filed. [51]; *see also* Martin Declaration at ¶ 2.

Defendant does not address this Court's Order [27] or the authority cited in Plaintiff's Memorandum in Support of its Motion for Electronic Service of Process Pursuant to Fed. R. Civ. P. 4(f)(3) [17]. Rather, Defendant argues, without providing any legal authority, that the exclusive method for service of a China-based individual or entity is under the Convention of 15 November 1965 on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters ("Hague Convention"). [56] at pp. 7-8. This would require that the Chinese Central Authority serve documents on the physical address of Defendant, a process that takes 1-2 years.[8] Neither Fed. R. Civ. P. 4 nor any other rule requires that a party first attempt service through the Hague Convention and it is not reasonable for Plaintiff to wait months or years for its trademark and copyright infringement claims to be addressed. Finally, service via email and electronic publication is not prohibited by international agreement (or Chinese law) and comports with constitutional notions of due process. Martin Declaration at ¶ 8.

---

[7] Defendant's Motion amounts to an improper attempt to seek reconsideration of this Court's Order [27]. Defendant's Motion does not address the circumstances under which reconsideration is appropriate, namely "the [c]ourt has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the [c]ourt by the parties, or has made an error not of reasoning but of apprehension." *Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir. 1990). Defendant cannot sidestep the reconsideration process, which is "to be granted only in such extraordinary circumstances … Indeed, the court's orders are not mere first drafts, subject to revision and reconsideration at a litigant's pleasure." *United States Securities and Exch. Comm'n v. National Presto Indus., Inc.*, 2004 WL 1093390, at *2 (N.D. Ill. Apr. 28, 2004). As such, Defendant's motion under Rule 12(b)(4)-(5) does not comport with the Federal Rules of Civil Procedure.

[8] The standard turnaround time for service in accordance with the Hague Convention in China is now between 1 and 2 years. *See Sulzer Mixpac AG v. Medenstar Indus. Co.,* 312 F.R.D. 329, 332 (S.D.N.Y. 2015) (noting that the plaintiff had submitted materials to Chinese Central Authority eight months prior, "however, plaintiff has no indication on when service might be effectuated").

a. Legal Authority Regarding Service of Process.

Rule 4(f) of the Federal Rules of Civil Procedure governs international service of process on foreign individuals. Service under Fed. R. Civ. P. 4(f)(3) "must be (1) directed by the court; and (2) not prohibited by international agreement. No other limitations are evident from the text." *FTC v. Repair All PC, LLC*, 2017 U.S. Dist. LEXIS 83173, at *8 (N.D. Ohio May 31, 2017). Rule 4(f)(3) empowers the Court with flexibility and discretion to fit the manner of service utilized to the facts and circumstances of the particular case. *Id.*

Rule 4 does not require that a party attempt service of process by other methods enumerated in Rule 4(f) before petitioning the court for alternative relief under Rule 4(f)(3), and the Hague Convention does not displace Rule 4(f)(3). *See Nagravision SA v. Gotech Int'l Tech. Ltd.*, 882 F.3d 494, 498 (5th Cir. 2018) (defendant's argument "misses the mark because service was not effected pursuant to the Hague Convention, and that agreement does not displace Rule 4(f)(3)."); *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1014-1015 (9th Cir. 2002). As the *Rio Properties* Court explained, Rule 4(f) does not create a hierarchy of preferred methods of service of process. *Rio Props., Inc.*, 284 F.3d at 1014. To the contrary, the plain language of the Rule requires only that service be directed by the court and not be prohibited by international agreement. There are no other limitations or requirements. *Id.* Alternative service under Rule 4(f)(3) is neither a "last resort" nor "extraordinary relief," but is rather one means among several by which an international defendant may be served. *Id.* The task of determining whether a given case requires alternative service of process "is placed squarely within the sound discretion of the district court." *FTC v. Repair All PC, LLC*, 2017 U.S. Dist. LEXIS 83173, at *9.

Moreover, the Ninth Circuit in *Rio Properties* held, "without hesitation," that e-mail service of an online business defendant "was constitutionally acceptable." *Rio Props., Inc.*, 284 F.3d at 1017. The Court reached this conclusion, in part, because the defendant conducted its

11

business over the Internet, used e-mail regularly in its business, and encouraged parties to contact it via e-mail. *Id.* Courts across the United States, including in this District, have held that service of process by e-mail and electronic publication on China-based defendants pursuant to Rule 4(f)(3) is appropriate and may be the only means of effecting service of process "when faced with an international e-business scofflaw." *Id.* at 1018; *Sulzer Mixpac AG*, 312 F.R.D. at 331-32 (S.D.N.Y. 2015); *see also* Martin Declaration at ¶ 7 (collecting cases in this District and other Districts).

      b.   <u>Attempting Service Through the Hague Convention Is Not Mandatory.</u>

"The Hague Convention does not displace Fed. R. 4(f)(3)." *Gianni Versace, S.P.A. v. Yong Peng, at al.,* No. 18-cv-5385 (N.D. Ill. Feb. 27, 2019); *Nagravision SA v. Gotech Int'l Tech. Ltd*., 882 F.3d at 498. Rule 4(f) does not require that a party attempt service of process through the Hague Convention as prescribed in Rule 4(f)(1) before petitioning the Court for alternative relief under Rule 4(f)(3). *Gianni Versace, S.P.A. v. Yong Peng, at al.,* No. 18-cv-5385 (N.D. Ill. Feb. 27, 2019); *Rio Props,* 284 F.3d at 1014. According to its plain language, Fed. R. Civ. P. 4(f)(3) requires that service must be (1) directed by the Court, and (2) not prohibited by international agreement. *Id*. No other limitations are evident from the text. *Id*. Rule 4(f)(3) "is not subsumed within or in any way dominated by Rule 4(f)'s other subsections; it stands independently, on equal footing. Moreover, no language in Rules 4(f)(1) or 4(f)(2) indicates their primacy, and certainly Rule 4(f)(3) includes no qualifiers or limitations which indicate its availability only after attempting service of process by other means." *Rio Props,* 284 F.3d at 1015. Service under Fed. R. Civ. P. 4(f)(3) is "neither a last resort nor extraordinary relief. It is merely one means among several which enables service of process on an international defendant." *Id*. (citations omitted).

Since "[the Supreme Court] has not provided clear guidance as to how the requirements of the Hague Convention interact with a court's authority to order alternative service under Rule 4(f)(3)," many courts "have reasoned that alternative service may be ordered pursuant to Rule

4(f)(3) as long as the alternative method of service is not expressly prohibited by the Convention or objected to by the receiving state." *Richmond Techs., Inc. v. Aumtech Bus. Solutions*, 2011 U.S. Dist. LEXIS 71269, at *40 (N.D. Cal. July 1, 2011). Numerous Courts have authorized alternative service pursuant to Fed. R. Civ. P. 4(f)(3) even when the defendant resides in a country that is a signatory to the Hague Convention, including for China-based defendants. *See Id.* at *40-41*; see also MCM Holding AG, et al. v. Dequn Zhao, et al*., No. 18-cv-1677 (N.D. Ill. Aug. 14, 2018) (authorizing email service on China-based defendant pursuant to Fed. R. Civ. P. 4(f)(3)); *Nagravision SA*, 882 F.3d at 498; *Sulzer Mixpac AG*, 312 F.R.D. at 331-32 (same); *In re LDK Solar Secs. Litigation*, 2008 U.S. Dist. LEXIS 90702, at *11 (N.D. Cal. June 12, 2008) (same).

      c.  <u>Service via Email and Electronic Publication Is Not Prohibited by The Hague Convention, and China Has Not Objected to Service of Process by Email and Electronic Publication.</u>

Courts have agreed that service by email is not prohibited by the Hague Convention, including for China-based defendants. *Maclean-Fogg Co. v. Ningbo Fastlink Equip. Co.*, 2008 U.S. Dist. LEXIS 97241, at *5 (N.D. Ill. Dec. 1, 2008) ("[t]he Hague Convention does not prohibit service by e-mail or facsimile"); *Sulzer Mixpac AG v. Medenstar Indus. Co*., 312 F.R.D. at 331-32 (granting motion to serve Chinese defendant by email); *Nanya Tech. Corp. v. Fujitsu, Ltd.*, 2007 U.S. Dist. LEXIS 5754, at *7 (D. Guam Jan. 25, 2007). Further, limiting alternative service methods to only those explicitly authorized by China would necessarily render Fed. R. Civ. P. 4(f)(3) superfluous and redundant of Fed. R. Civ. P. 4(f)(1).

China has not objected to service by email and electronic publication. To the contrary, China explicitly authorizes service by email in certain situations and service by public announcement "if the whereabouts of a recipient of the service is unknown, or if a document cannot be served by the other methods reflected in the law." *See Chanel, Inc.*, 2010 U.S. Dist. LEXIS 50745, at *7; Martin Declaration at ¶ 8. China also explicitly authorizes "[s]ervice by facsimile,

e-mail and any other means through which the receipt of the document may be acknowledged" on defendants located outside of China. Martin Declaration at ¶ 8. Reciprocity dictates that if U.S. residents can be served via email by a Chinese court, the reverse is also true.

While China has objected to service by postal mail, courts have declined to extend countries' objections to specific forms of service permitted by Article 10 of the Hague Convention, such as postal mail, to service by other alternative means, including email. *Sulzer Mixpac AG*, 312 F.R.D. at 331-32 (collecting cases holding that service by email does not violate any international agreement where the objections of the recipient nation are limited to those means enumerated in Article 10). "China's objection to service by postal mail does not cover service by email, and these forms of communications differ in relevant respects. Email communications may be more reliable than long-distance postal communications, and the arrival of an email at its destination address may be more readily tracked." *Id*. at 332. Further, while there may be strict and formal procedures for effectuating service in China, these are of little consequence to this Court's determination. *Nanya Tech. Corp*., 2007 U.S. Dist. LEXIS 5724, at *14 (the Court should not consider the receiving country's laws of service when evaluating whether service pursuant to Fed. R. Civ. P. 4(f)(3) was proper). Accordingly, service of process by electronic publication and email was appropriately ordered by this Court and effectuated under Fed. R. Civ. P. 4(f)(3) since it is not prohibited by the Hague Convention, and because China has not objected to service of process by electronic publication and email. Defendant has provided no authority to the contrary.

    d. <u>Service via Email and Electronic Publication Comports with Constitutional Notions of Due Process.</u>

This Court also correctly found that service via email and electronic publication comported with constitutional notions of due process, because it was reasonably calculated, under all of the circumstances, to apprise Defendant of the pendency of this action and afford it an opportunity to

present objections.  *See Maclean-Fogg Co.*, 2008 U.S. Dist. LEXIS 97241, at *5.  This was further confirmed by Defendant's actual receipt of notice via email.  On February 27, 2019, pursuant to this Court's Order [27], Plaintiff served Defendant via the email address associated with the PayPal account provided by the defendant via chat on Defendant's Internet Store vaporever@gmail.com[9] (the "Service Email Address.").  [51].  Prior to formal service, Defendant contacted Plaintiff on February 7, 2019 using a different email address, inquiring about the frozen PayPal account associated with vaporever@gmail.com.  Martin Declaration at ¶ 5.  Plaintiff responded on February 8, 2019, providing a link to the website where the Amended Complaint and TRO were published.  *Id.*  Plaintiff has further provided notice of its Motion for Entry of the Preliminary Injunction to Defendant at the Service Email Address.  Martin Declaration at ¶ 3.  Service by electronic publication and email was also particularly necessary in this Case since Plaintiff sought expedited injunctive relief.

Notwithstanding Defendant's actual notice via email, courts have also held that communications to email addresses listed on a defendant's website comport with due process: "[w]hile email communications may also go astray or fail to come to the relevant individuals' attention, the Court finds that in this case, service to the email address listed on defendant's website is 'reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'"  *Sulzer Mixpac AG*, 312 F.R.D. at 332.  Therefore, this portion of Defendant's Motion should be denied.

---

[9] The Defendant was also served process via the following additional email addresses associated with the store Vaporever Biotech (Huizhou) Co., Limited: 441707472@qq.com, hangbooeliquid@gmail.com, info@careled.net, info@vaporever.com, ken@vaporever.com, and kenhangboo@gmail.com. Martin Declaration at ¶ 4.

IV. **Plaintiff Has Properly Stated Its Claims for Trademark and Copyright Infringement. Defendant's Fed. R. Civ. P 12(b)(6) Defense Must Be Denied.**

This Court found that Plaintiff demonstrated a strong likelihood of success on the merits as to Defendant when it entered the Preliminary Injunction. [53]. Despite this finding, Defendant argues that "Monster's trademark infringement claim is barred by the doctrine of nominative fair use," and Defendant contests Plaintiff's registration for the Monster Energy Copyrighted Design, arguing that it "is not original work belonging to Monster." [56] at pp. 8-10. Defendant's portion of its Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6) should be denied.

    a. Legal Standard for Motion to Dismiss.

A motion to dismiss under Rule 12(b)(6) should be granted *only* if it appears beyond a reasonable doubt that the plaintiff can prove no set of facts in support of its claim which would entitle it to relief. *Conley v. Gibson*, 335 U.S. 41, 48 (1957) (emphasis added); see also Fed. R. Civ. P. 12(b)(6); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 540, 570 (2007). A motion under Rule 12(b)(6) merely tests the legal sufficiency of a complaint, requiring the Court to construe the complaint liberally, assume all facts as true, and draw all reasonable inferences in favor of the plaintiff. *Twombly*, 550 U.S. at 556-57.

    b. Defendant's Use of Plaintiff's Trademarks is Not Nominative Fair Use.

Defendant argues that Plaintiff's trademark infringement claim is barred by the doctrine of nominative fair use, citing Section 1115(b)(4) of the Lanham Act. [56] at p. 8. To establish nominative fair use, Defendant must show that (1) it did not use the mark as a trademark, (2) the mark is descriptive of Defendant's goods or services, and (3) it used the mark fairly and in good faith. *See* 15 U.S.C. § 1115(b)(4).

Defendant clearly fails the second prong, as Defendant argues that it used MEC's trademarks to describe "the type of products that Vaporever sells, e.g., the type of flavor for

16

electronic cigarette." [56] at p. 9. Defendant fails to show how "Monster Energy" is descriptive of an electronic cigarette flavor or provide any evidence as to whether the average consumer perceives "Monster Energy" as describing a characteristic of Defendant's vaping juice products. *Navistar Int'l Transp. Corp. v. Freightliner Corp.*, 1998 U.S. Dist. LEXIS 22155, at *16-17 (N.D. Ill. 1998). Moreover, as to the first and third prongs, Defendant fails to explain why it was necessary to use both MEC's Claw Icon Mark and a stylized form of the MONSTER ENERGY word mark to describe the flavor of its vaping products. Rather, Defendant uses both the famous Claw Icon Mark and a stylized form of the MONSTER ENERGY word mark as "attention-getting symbol[s]," which is more use of the marks than necessary to convey information and instead suggests sponsorship or endorsement by Plaintiff. *World Impressions, Inc. v. McDonald's Corp.*, 235 F. Supp. 2d 831, 843 (N.D. Ill. 2005) ("plaintiff's use of the stylized form of the word 'Disneyland' and the castle design goes beyond mere nominative use"); *Toyota Motor Sales, U.S.A., Inc. v. Tabari*, 610 F.3d 1171, 1182 (9th Cir. 2010) (finding that defendant's use of the stylized Lexus mark and "Lexus L" logo was more use of the mark than necessary and suggested sponsorship or endorsement by Toyota); *New Kids on the Block v. News Am. Publ'g, Inc.*, 971 F.2d 302, 308 n.7 (9th Cir. 1992) (providing an example that defendant would not be entitled to use Coca-Cola's distinctive lettering). Defendant's use of multiple MONSTER ENERGY Trademarks is a clear attempt to deceive consumers into believing that the product originates from, is sponsored by or affiliated with Monster Energy Company. Moreover, Defendant's use of its own mark in addition to the multiple MONSTER ENERGY Trademarks does not negate its use of the MONSTER ENERGY Trademark from being a trademark use. *See World Impressions, Inc.*, 235 F. Supp. 2d at 843.

Defendant cites *SportFuel, Inc. v. PepsiCo, Inc*. in support of its argument. [56] at pp. 9-10. However, in the *SportFuel* case, the defendant used the term "Sports Fuel" to describe "items specifically designed to improve athletic performance." 2018 U.S. Dist. LEXIS 99738, at *13 (N.D. Ill. June 14, 2018). Further, in contrast to Defendant here, the defendant in *SportFuel* did not use the plaintiff's distinctive lettering or logo. Finally, unlike Defendant here, the defendant in *SportFuel* displayed the Gatorade house mark more prominently than the text containing plaintiff's mark "Sports Fuel." *Id*. at *9.

As such, Defendant has not established that Plaintiff's trademark infringement claim is barred by the doctrine of nominative fair use, and this portion of Defendant's Motion should be denied.

c. <u>Defendant's Argument that Monster Energy Company's Federally Registered Copyrighted Design for the Claw Mark is Hebrew for "666" Is Frivolous and Should Be Rejected.</u>

Defendant also "contends that Monster's stylized claw with jagged edges is not original work belonging to Monster" and that "Monster obtained the copyright work fraudulently." [56] at p. 10. Plaintiff alleged that it has registered its Monster Energy Copyrighted Design with the United States Copyright Office, and Exhibit 2 to the Amended Complaint contains copies of the registration certificate for U.S. Copyright Registration Number VA 1-789-900 and the corresponding supplemental registration changing ownership name from Hansen Beverages Company to Monster Energy Company (VA 1-433-242). [9] at ¶ 21, [9-2]; *see also* Kingsland Declaration at ¶ 7. Defendant only provides a speculative argument that the Monster Energy Copyrighted Design is "non-original" because, in Defendant's opinion, it resembles the Hebrew symbols for the number "666." [56] at pp. 10-11. Defendant otherwise provides no evidence or

authority in support of this argument.[10]   As such, MEC's registration certificate for the Monster Energy Copyrighted Design should be accorded *prima facie* evidence of validity. *Yurman Design, Inc. v. Golden Treasure Imps., Inc*., 275 F. Supp. 2d 506, 515-16 (S.D.N.Y. 2003).

Finally, Defendant contends that its use of the Monster Energy Copyrighted Design is fair use. [56] at p. 11.  However, Defendant copied verbatim and used the Monster Energy Copyrighted Design to offer for sale and sell the Counterfeit Products.  "[T]he Supreme Court has held that copies made for commercial or profit-making purposes are presumptively unfair." *Ty, Inc. v. West Highland Publ'g, Inc*., 1998 U.S. Dist. LEXIS 15869, at *39 (N.D. Ill. Oct. 2, 1998) (quoting *Rogers v. Koons*, 960 F.2d 301, 309 (2d Cir. 1992)).  Clearly, Defendant stands to profit from exploitation of the entire Monster Energy Copyrighted Design without paying. *Id*. at *40.  As such, the first fair use factor (purpose and character of the use) and the third fair use factor (amount and substantiality of the portion used in relation to the copyrighted work as a whole) weigh in favor of Plaintiff.  *See* 17 U.S.C. § 107.  The Monster Energy Copyrighted Design is a creative work (as opposed to facts or news), which indicates that the second fair use factor also weighs in favor of Plaintiff. *Storm Impact, Inc. v. Software of the Month Club*, 13 F. Supp. 2d 782, 789 (N.D. Ill. 1998).  Finally, if Defendant's unauthorized use becomes widespread, it would prejudice Plaintiff's potential market for the Monster Energy Copyrighted Design. *Ty, Inc*., 1998 U.S. Dist.

---

[10] Arguments in a brief, unsupported by documentary evidence, are not evidence. *Medallion Prods. v. McAlister*, 2008 U.S. Dist. LEXIS 80550, at *8 (N.D. Ill. Oct. 9, 2008) ("As it must, the court has disregarded any unsupported factual statements") (citing *United States v. Stevens*, 500 F.3d 625, 628-29 (7th Cir. 2007) ("[I]t is universally known that statements of attorneys are not evidence.")); *Mahaffey v. Ramos*, 588 F.3d 1142, 1146 (7th Cir. 2009) ("[p]erfunctory, undeveloped arguments without discussion or citation to pertinent legal authority are waived.").

Additionally, Defendant appears to have borrowed its unsupported argument from an online conspiracy theory about the Monster Energy Copyrighted Design. *See* Tim Carman, *The woman who claims Monster Energy drinks are a tool of the devil is back, just in time for Halloween*, Washington Post, Oct. 23, 2018, *available at* https://www.washingtonpost.com/news/voraciously/wp/2018/10/23/the-woman-who-claims-monster-energy-drinks-are-a-tool-of-the-devil-is-back-just-in-time-for-halloween/?noredirect=on&utm_term=.a2f6c02a76de.

LEXIS 15869, at *49. Defendant's products substitute for a derivative market that Plaintiff could potentially choose to develop or license others to develop, and the fact that Plaintiff has not entered the electronic cigarette market to date is irrelevant. *Id*. at *48.

**V.      Defendant's Motion to Sever Is Moot.**

This Court entered a Final Judgment Order against all other defendants in this case on March 26, 2019. [64]. Since no other defendants remain in this case, Defendant's motion to sever ([56] at pp. 15-16) is moot.

## CONCLUSION

Based on the above, Monster Energy Company respectfully requests that this Court deny Defendant's Motion to Dismiss in its entirety [55].

Dated this 16th day of April 2019.          Respectfully submitted,


                                        /s/ Justin R. Gaudio
                                        Amy C. Ziegler
                                        Justin R. Gaudio
                                        Allyson M. Martin
                                        Abby M. Neu
                                        Greer, Burns & Crain, Ltd.
                                        300 South Wacker Drive, Suite 2500
                                        Chicago, Illinois 60606
                                        312.360.0080 / 312.360.9315 (facsimile)
                                        aziegler@gbc.law
                                        jgaudio@gbc.law
                                        amartin@gbc.law
                                        aneu@gbc.law

                                        *Counsel for Plaintiff Monster Energy Company*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 16th day of April 2019, I will electronically file the foregoing with the Clerk of the Court using the CM/ECF system.  The CM/ECF system will send a "Notice of E-Filing" to the attorneys of record in the case.

/s/ Justin R. Gaudio
Amy C. Ziegler
Justin R. Gaudio
Allyson M. Martin
Abby M. Neu
Greer, Burns & Crain, Ltd.
300 South Wacker Drive, Suite 2500
Chicago, Illinois 60606
312.360.0080 / 312.360.9315 (facsimile)
aziegler@gbc.law
jgaudio@gbc.law
amartin@gbc.law
aneu@gbc.law

*Counsel for Plaintiff Monster Energy Company.*
